**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
www.flsb.uscourts.gov

In re: SOMKID PUNMA,                                               Case No: 10-22328-LMI
       Debtor.              /                                     Chapter 13

**MORTGAGEE'S RESPONSE TO**
***MOTION TO REOPEN CHAPTER 13 CASE* [ECF#372]**
**AND *MOTION TO VALUE AND DETERMINE SECURED***
***STATUS OF LIEN ON REAL PROPERTY* [ECF#373]**

      Mortgagee, the Estate of Frank Alesi, responds and objects to Debtor's *Motion to Reopen Chapter 13 Case* [ECF#372] ("the Motion to Reopen") and Debtor's *Motion to Value and Determine Secured Status of Lien on Real Property* [ECF#373] ("the Motion to Strip Lien"), collectively, "the Motions," and states:

      1.     The homestead mortgage that is the subject of the Motions is referred to herein as the Alesi Secured Claim;

      2.     The Mortgagee, Frank Alesi, was approximately 90 years old when the Debtor filed this bankruptcy;

      3.     Frank Alesi passed away in 2017 and his estate was probated. The Alesi Secured Claim was not treated in his estate as it was unknown to his heirs. Frank Alesi is survived by his son, Alan Alesi, and his step-children, Robert Berse and Carol Kovnot;

      4.     In addition to what is alleged in the Motions, the Court should be aware of the following:

          a.    This Court entered its *Order Confirming Chapter 13 Plan* [ECF#304] ("the Confirmation Order") which confirmed the *Debtor's Fifth Amended Plan* [ECF#291] ("the Confirmed Plan") and, later entered its *Order Granting*

*Motion to Modify Plan and Approving First Modified Chapter 13 Plan* [ECF#321] ("the Modification Order") which confirmed the terms of the Debtor's *First Modified Chapter 13 Plan* [ECF#314] ("the Approved Modified Plan");

b. Neither the Confirmed Plan nor Approved Modified Plan provided for, <u>or even mentioned</u>, the Alesi Secured Claim;

c. Frank Alesi filed a proof of claim in this case classified as a secured claim in the amount of $200,000 [Claim No. 24] ("the Claim"). *Debtor's Objection to Claim No. 24 of Frank Alesi* [ECF#128] ("Claim Objection"), issued on negative notice but nonetheless set for hearing, objected to the Claim, stating:

> <u>The real property serving as collateral for this debt is being surrendered</u> by the Debtor. The underlying claim is related to business ventures. <u>Upon information and belief, this claim is being treated within the Chapter 11 bankruptcy cases</u> pending before the Broward Division of this Honorable Court (jointly administered under lead Case No. 10-23328-JKO). The Debtor's personal guarantee, if any, is currently contingent and unliquidated. This claim should be stricken and disallowed. [emphasis added]

d. Notwithstanding the Debtors' clear representation to the contrary, he never proposed to surrender and never did surrender the collateral for the Alesi Secured Claim;

e. After hearing (perhaps on the consent calendar, perhaps not), the Court entered its *Order Sustaining Objection to Claim* [ECF#192] reciting that

same was entered upon the filing of a "Certification of No Response" (although no certification appears on the docket), stating:

> Frank Alesi Claim # 24 is <u>stricken without prejudice to Frank Alesi to pursue its interest in its underlying collateral</u>. [emphasis added]

f.  Frank Alesi was never listed or scheduled as a creditor in the Chapter 11 bankruptcy of the maker of the underlying promissory note, *Stir Moon Sushi & Noodle & Thai, Inc.*, Case No. 10-24035-JKO, ("Maker's Chapter 11 Bankruptcy") and therefore he received no notice of that bankruptcy. Nor was Frank Alesi ever listed or scheduled as a creditor in any of the other Chapter 11 cases of the other five restaurant entities owned by the Debtor jointly administered under the lead case, *In re: Moon Thai & Japanese, Inc.*, Case No. 10-23328-JKO;

g.  Frank Alesi received no distribution from the Chapter 13 Trustee in this case, nor did he receive any distribution in any of the six jointly administered Chapter 11 cases;

h.  Debtor personally signed all of the schedules filed in the six jointly administered Chapter 11 cases under penalty of perjury stating, *inter alia*, "I have reviewed and signed the original(s) of the document(s) identified above and the information contained in the Verified Documents(s) is true and correct to the debt of my knowledge and belief;"

    i. Debtor filed a motion to value the lien of a different mortgagee on his homestead (US Specialized Loan Servicing, LLC), utilizing as his proposed value the January 2010 <u>Miami-Dade County Property Appraiser's value</u>. But Frank Alesi was not provided notice of this motion and in no way participated in the Court's consideration, if any, of the value of Debtor's homestead. Further, neither the Court's docket nor the text of the *Order Granting the Motion to Value and Determine Secured Status of Lien on Real Property Held by Specialized Loan Servicing, LLC* [ECF#233] ("the Specialized Strip Order") indicates that any party contested – or that the Court gave any affirmative consideration to – whether the Debtor's proposed value of his homestead was understated as compared to the true value of the property as of the May 5, 2010 petition date. Indeed, the order valuing the lien states that "the Debtor's assertions made in support of the Motion" were "without objection;"

    j. A review of the *Chapter 13 Standing Trustee's Final Report and Account* [ECF#367] reflects that claimants holding general unsecured claims of $2,406,483.16 received dividends totaling $124,590.12 (5.18%);

<u>Argument</u>

5. The Court has discretion to grant or deny the Motion to Reopen based on the specific facts and equities of this case (see this Court's opinion, *In re Losada*, 557 B.R. 244, Bkrtcy. S.D.Fla. (2016));

6. In the case at bar, the equities clearly lie with Frank Alesi and against the Debtor due to:

   a. The fact that this case was closed more than nine years ago;

   b. Frank Alesi's advanced age as compared to the Debtor;

   c. The fact that the Debtor misled Frank Alesi by falsely stating in the Claim Objection that he was surrendering the collateral;

   d. The fact that the Debtor misled Frank Alesi by falsely stating in the Claim Objection that the Alesi Secured Claim was "being treated within the Chapter 11 bankruptcy cases;"

   e. The fact that the Debtor misled Frank Alesi by falsely stating in the Claim Objection that his claim was contingent and unliquidated;

   f. The fact that the Debtor misled Frank Alesi by falsely stating in the order on the Claim Objection he prepared and uploaded to the Court that Frank Alesi was free to pursue his collateral;

   g. The fact that the Debtor misled Frank Alesi by excluding him from the schedules he prepared, signed under penalty of perjury, and filed in the Maker's Chapter 11 Bankruptcy;

   h. The fact that Frank Alesi received no distribution from the Debtor or the Maker of the note in their respective bankruptcies, when he was otherwise so entitled; and

      i. The fact that the Debtor held onto his six-restaurant empire while intending that Frank Alesi be stripped of his entire investment and receive nothing; and

7. Based on the thoroughly analyzed and well-reasoned opinion of the Honorable Peter D. Russin, in *In re: Rivera*, 631 B.R. 502, Bkrtcy. S.D.Fla. (2021), this Court lacks jurisdiction to strip the Alesi Secured Claim inasmuch as:

    a. Neither the Confirmed Plan nor the Approved Modified Plan identified or treated the Alesi Secured Claim at any point during the case;

    b. The Debtor completed his plan;

    c. The Debtor received his discharge; and

    d. The case was closed;

8. Because of the foregoing facts and the following chain of logic set forth by Judge Russin in the Rivera opinion, the estate has no interest in the property and the bankruptcy court therefore lacks jurisdiction to strip the Alesi Secured Claim. Judge Russin set forth as follows:

> Upon confirmation, unless otherwise stated in the confirmed plan or the confirmation order, the property of the estate vests in the debtor. Once property leaves the estate, the Court's jurisdiction over the property is limited and, in most cases, lost. While the debtor can modify the plan after confirmation, the plan cannot be modified after all payments have been made. Once the plan is completed, the debtor (if eligible) is discharged, and the case is closed. Unless otherwise expressly stated, the closure of the bankruptcy case triggers the abandonment of any remaining unadministered property of the estate. Abandonment divests the estate of the property and it reverts to the debtor. As a result, the Court lacks jurisdiction to strip liens secured by abandoned property.
>
> When Rivera confirmed her plan, the estate ceased to have an interest in the Condo. When Rivera completed her plan payments, she was permanently

unable to modify the plan to identify or treat the Second Mortgage. Rivera was then discharged, and her case was closed. Upon closure of the case, to the extent the estate held some fictional interest in the Condo, that interest was abandoned. The Court simply has no jurisdiction over the Condo.

*Id.* at 505.

9. Judge Russin later noted in his opinion that that the Court may have jurisdiction if stripping the lien is incident to enforcing its prior orders, but the language contained in both the Confirmation Order and the Modification Order does not confer such jurisdiction in this case, because it simply does not apply to Frank Alesi or the Alesi Secured Claim;

10. The Confirmation and Modification Orders provide in pertinent part:

> To the extent the Plan sought a determination of valuation pursuant to Bankruptcy Rule 3012, and no objections were filed or any objections were resolved, the terms of the Plan will be binding upon the affected secured creditors, and any allowed proof of claim will be secured only to the extent of the value as provided for in the Plan and unsecured as to the balance of the claim.

11. Frank Alesi is not an "affected secured creditor" as that phrase is used above because the Confirmed Plan (and all prior plans filed in the case) spoke only to any "SECURED CREDITOR LISTED [on the plan] BELOW" and Frank Alesi was not so listed. Further, the Confirmed Plan (and all prior plans filed in the case) stated that "A SEPARATE MOTION WILL ALSO BE SERVED ON YOU" and, of course, no such motion was ever prepared, filed, or served on Frank Alesi, nor was he a party to, or even have notice of, the Debtor's motion to value the lien of US Specialized Loan Servicing, LLC. Having had no due process, Frank Alesi cannot have been "affected" by the Specialized Strip Order;

12. Further, the Claim is not an "allowed proof of claim" as that phrase is used in the Confirmation and Modification Orders because the Claim was "stricken" by the *Order Sustaining Objection to Claim*;

13. In this case, as in *Rivera*, neither the Confirmed Plan, the Approved Modified Plan, nor any of the orders attempted to treat the Alesi Secured Claim as an unsecured claim, as all references to it called for it to remain secured and for Frank Alesi to retain a secured interest in the collateral and to be able to pursue same;

14. Further, neither the Confirmed Plan, the Approved Modified Plan, nor any of the orders even suggested a general intent to strip all junior liens from the homestead;

15. In short, nothing in this case provides a "basis the Court may cling to for jurisdiction." *Id.* at 506.

WHEREFORE, on the grounds set forth above, Frank Alesi respectfully suggests that the Debtor has not carried his burden of proof to show that cause exists to reopen this case as the Court lacks subject matter jurisdiction to grant his Motion to Strip Lien, and his Motion to Reopen Case must therefore be denied.

Submitted By:

/s/ James Schwitalla
James Schwitalla, Esquire
F.B.N. 911488
Attorney for the Frank Alesi
Park Place II
12954 S.W. 133 Court
Miami, Florida 33186
Office (305) 278-0811